IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYSHAWN V. PIERCE,<br><br>               Petitioner,<br><br>vs.<br><br>TIM VIRGA,[1] Warden, California State<br>Prison, Sacramento,<br><br>               Respondent. | No. 2:11-cv-02854-JKS<br><br>MEMORANDUM DECISION |

Jayshawn V. Pierce, a state prisoner appearing *pro se*, filed a Petition for a Writ of
Habeas Corpus under 28 U.S.C. § 2254.  Pierce is currently in the custody of the California
Department of Corrections and Rehabilitation, incarcerated at the California State Prison,
Sacramento.  Respondent has answered.  Pierce has not replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

A jury convicted Pierce of first degree murder (Cal. Penal Code § 187(a)) during the
commission of an attempted robbery (Cal. Penal Code § 190.2(a)(17)), with the personal
discharge of a firearm resulting in death (Cal. Penal Code § 12022.53(d)), and two counts of
attempted robbery (Cal. Penal Code §§ 664, 211).  The Sacramento County Superior Court
sentenced Pierce to life in prison without the possibility of parole, plus two years and eight
months for the attempted robberies.  The California Court of Appeal, Third Appellate District,
directed the trial court to stay the sentence on the attempted robbery of the victim and reduce the
sentence on the other attempted robbery conviction to eight months, but otherwise affirmed the

---

[1] Tim Virga, Warden, California State Prison, Sacramento, is substituted for Kathleen
Allison, Warden, California State Prison, Corcoran.  Fed. R. Civ. P. 25(d).

conviction and sentence in an unpublished decision,[2] and the California Supreme Court denied review on September 1, 2010. Pierce timely filed his Petition for relief in this Court on August 25, 2011, and his Amended Petition with leave of Court on May 21, 2012.

The facts underlying Pierce's conviction as recited by the California Court of Appeal:

The motivation for the robbery that resulted in Wilson's murder was the acquisition of bail money for C.J. Finley. Finley was a pimp who was in jail in San Bernardino County on a gun charge. Finley and [Pierce] were close friends. Germannell "Keisha" Jones was Finley's girlfriend, and Marquita Bevans was Finley's cousin.

On the afternoon of May 21, 2006, [Pierce] called Freddie Rimpson and asked him if he wanted to "hit a lick," meaning rob someone. [Pierce] told Rimpson he wanted to hit a lick because he had to "get my Nigga out of jail." Rimpson refused. [Pierce] had "hit some licks" with Finley before.

Also on the afternoon of May 21, 2006, Jones and Bevans were getting dressed up to go have some "casual dates" which meant they were going to prostitute themselves in order to get money to bail Finley out of jail. After they got dressed for their "dates," but before going out, [Pierce] called Jones and told her to come over and see his daughter.

Jones and Bevans picked up [Pierce] from a house in Oak Park. [Pierce] came out of the house with a shotgun that was wrapped up. [Pierce] told Jones he wanted to drop the shotgun off at his home. They went to [Pierce's] house, and he took the shotgun into the house. After leaving [Pierce's] house, they went to Finley's mother's house, where they spent some time drinking. They stayed there until around 9:00 p.m.

Around 9:00 p.m., they picked up Rimpson, and went back to [Pierce's] house. They stayed there about 20 minutes, then went to a bar called Bobby T's. Sometime after midnight, Jones and Bevans were walking around the parking lot talking to guys. They did not get any "dates," but did manage to get a phone number for a future "date." [Pierce] suggested they call the number and take the "date" to a room up the street where [Pierce] would come in and rob the person. Jones refused because she was not "into" robbing people.

They went to another club called the Idle Hour. It was after 1:00 a.m. They parked across the street and were waiting for people to come out of the club. A couple, Wilson and Vasquez, came out who appeared intoxicated. They were kissing. They got into their vehicle and continued kissing. When the couple drove off, [Pierce], Jones, Bevans, and Rimpson followed them.

---

[2] *People v. Pierce*, No. C060588, 2010 WL 1972942 (Cal. Ct. App. May 18, 2010).

[Pierce] was driving.  At some point he sped up and cut in front of the other car, but Wilson swerved around him.  [Pierce] stopped the car, and Rimpson went to the trunk to retrieve the shotgun.  [Pierce] continued following Wilson and Vasquez for another three blocks or so to an apartment complex.  [Pierce] told Rimpson that they were going to "get a lick" referring to Wilson's black car.  [Pierce] asked one of the girls if it was good, and she replied that it was.  When they reached the apartment complex, Wilson came up to the car [Pierce] was driving, yelling and asking why they were following him.

Rimpson then stood up through the sun roof with the shotgun.  [Pierce] yelled at Rimpson to get out of the car, but Rimpson did not get out.  At some point Rimpson sat back down in the car, [Pierce] told Rimpson to give him the shotgun, and [Pierce] got out of the car with the shotgun.  [Pierce] pointed the shotgun at Wilson and Vasquez.  [Pierce] said, "Give me your shit[,]" or something to that effect.  Wilson and Vasquez had their hands up.  Vasquez had a purse.  They both said, "Take it."  Wilson responded that they did not want any trouble.

[Pierce] then shot Wilson between the eyes, killing him instantly.  One eye was completely obliterated.  The medical examiner estimated [Pierce] was standing four to five feet from Wilson when he fired the shotgun.  Vasquez sustained injuries to her hands from the shotgun blast.

Bevans and Jones were hysterical and scared, and yelled "[L]et's go, let's go!"  [Pierce] jumped back in the car and said, "I domed him."  They went back to Jones's house.  [Pierce] asked Jones if he could put the shotgun under her mattress, and she agreed.  Later that day Rimpson got the shotgun and disposed of it in a dumpster.  He then called Crime Alert.

[Pierce] spoke to Finley, who was in jail, the afternoon of the shooting.  Their conversation was recorded, and the relevant part was as follows:

"Finley:  What happened, my nigger?

Pierce:  You talking about last night?

Finley:  Hey, what happened?  My nigger kill game, talk baseball, my nigger.  What happened?

Pierce:  Okay.  Well, . . . we was on some . . . an [LIQ, i.e., lick], you feel me? . . . Trying to look, get some chalupa to get my . . . so I can get some bail . . ..  So I'm trying to think who I can bring with me, who I know you wouldn't really trip over having around your wifey . . ..  So I go get my cousin, you know who . . ..  I take him with me . . ..  We spot somebody, like, oh, and it is all good.  Yeah and she says like that's the one-that's the one.  I'm like, okay,  . . ..  [a]nd then we follow, woo . . ..  I follow him in and, nigger, I—my finger slipped, nigger.

Finley:  Huh?

Pierce:  The finger slipped . . ..  Man.  It was bad.

Finley:  It was ugly for 'em?

Pierce:  Man, nigger, I mean, like Men in Black.  Oh, that really hurts.

Finley: Man.  Well, did—did you get any chalupa?

Pierce:  No 'cause come on, come on, come on.  Let's go-go, let's go.[']

Finley: That's my girl.

Pierce:  But, I mean, I was like . . . suppose to grab a—the, um,—what the call it, the, uh, thing female bag bad I say . . ..

Finley:  Now, what'd you say, you was supposed to grab the what?

Pierce:  The pouch . . .. But this nigger, Cutty, . . . didn't want to get out the car.  He's standing out the sunroof like-just like . . . And I'm like, get the fuck out the car so I can do what I need to do. . .. He didn't want to leave out the car.  So it's like I couldn't do two things at once . . . So I—I hop out of the car, nigger and get it moving . . ..  So nigger we was gonna go do another one, but we—um, she was like we need a (Unintelligible) to go . . ..  So I'm not worried about her, but my Cutty . . . Nigger, this nigger came over here crying this morning, nigger.  Telling me the nigger DEAD . . ..

Finley:  [T]hat boy bitched up like that?

Pierce:  Nigger, came over here crying, nigger.

Finley:  Hell, no, my nigger, that ain't solid, bro.

Pierce:  I'm like, my nigger, what—everybody at that house where he live know about it . . ..

Finley:  Oh, my God, my nigger . . ..

Pierce:  I know what I gotta do."

Defense counsel argued to the jury that:  (a) Rimpson was the shooter, (b) there was no intent to rob anyone, and (c) the shooting was accidental.[3]

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition Pierce raises eight grounds:  (1) insufficiency of the evidence to support the "special circumstances" finding; (2) the trial court erroneously allowed the admission into evidence of a "cartoonish" killing in a science fiction movie; (3) error in admitting Pierce's admission of other robberies; (4) the trial court erred in failing to properly instruct the jury on the "special circumstance" charge; (5) the trial court erred in failing to instruct on involuntary manslaughter; (6) the felony-murder "special circumstance" rule was unconstitutionally applied; (7) the trial court failed to hold a *Marsden* hearing;[4] and (8) cumulative error.  In relation to his

---

[3] *Id.* at *1-3.

[4] The term "*Marsden* motion" comes from *People v. Marsden,* 465 P.2d 44, 47-48 (Cal. 1970), a California Supreme Court case that held that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant

(continued...)

second, third, fifth, and eighth grounds, Pierce also alleges that, to the extent that his claims were not properly preserved or federalized, he received ineffective assistance of counsel.

Respondent, contending that to the extent Pierce did not present the same factual and legal arguments in his Petition to this Court as he did in his petition for review before the California Supreme Court, he has not properly exhausted his state-court remedies. This Court agrees. This Court may not consider claims that have not been fairly presented to the state courts.[5] Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[6] To have properly exhausted his state court remedies, Pierce must have presented both the legal arguments and the factual basis to the highest state court.[7]

Pierce has not traversed the answer. 28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

Under § 2248, where there is no denial of the Respondent's allegations in the answer, or the denial is merely formal and unsupported by an evidentiary basis, the court must accept Respondent's allegations.[8] Where a petitioner has not disputed a contention in the response and

---

[4](...continued)
requesting substitute counsel the opportunity to present his reasons for the request, *i.e.* evidence and argument to establish that he is receiving ineffective assistance of counsel.

[5] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[6] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[7] *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir.2003) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

[8] *See Carlson v. Landon*, 342 U.S. 524, 530 (1952).

it does not appear from the record before the court that the contention is erroneous, the court may accept that contention.[9]  Consequently, this Court will not consider any arguments presented in the Petition before this Court that were not presented on the same legal and factual basis in his petition for review to the California Supreme Court.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[10]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[11]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[12]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[13]  When a claim falls

---

[9] *Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

[10] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-75 (2003) (explaining this standard).

[11] *Williams*, 529 U.S. at 412 (alteration added).

[12] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[13] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted);
(continued...)

under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[14]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[15]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[16]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[17]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[18]

_____

[13](...continued)
*see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[14] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[15] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[16] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[17] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[18] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas
(continued...)

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[19]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[20]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[21]  This Court gives

---

[18](...continued)
relief on the basis of little more than speculation with slight support").

[19] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[20] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[21] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[22]

## IV. DISCUSSION

Ground 1:  Insufficiency of the Evidence – "Special Circumstances"

Pierce contends that the evidence is insufficient to support a finding that "[t]he murder

was committed while he was engaged, in or an accomplice in, the commission of, or the

immediate flight after committing, or attempting to commit the following felonies:  [¶]  (A)

Robbery in violation of Section 211 or 212.5."[23]   The California Court of Appeal disagreed:

> [Pierce] argues there was insufficient evidence to support the felony-murder
> special circumstance because evidence that the murder was accidental meant the
> killing was not accomplished in order to advance an independent felonious purpose.
> [Pierce] is wrong.
>
> Although [Pierce] recognizes that the independent felonious purpose
> requirement is not the equivalent of an added intent or intent to kill requirement, the
> essence of his argument is that an accidental killing cannot qualify for the felony-
> murder special circumstance because by definition an accidental killing cannot have
> been motivated by any purpose.  However, the requirement that the killing be
> committed in order to advance an independent felonious purpose means simply that
> the felony (in this case robbery) was not merely incidental to the murder.  (*People v.
> Davis* (1995) 10 Cal .4th 463, 519, fn. 17.)  It does not mean that the murder must
> have been committed with the specific intent or purpose of furthering the robbery.
> (*Ibid.*)
>
> In other words, the criminal purpose motivating [Pierce's] criminal actions
> must have been robbery, not merely murder.   "The robbery-murder special
> circumstance applies to a murder in the commission of a robbery, not to a robbery
> committed in the course of a murder." (*People v. Marshall* (1997) 15 Cal.4th 1, 41.)
> No intent to kill need be found for a felony-murder special circumstance. (*People v.
> Anderson* (1987) 43 Cal.3d 1104, 1147.)
>
> A felony is not merely incidental to the murder if the intent to steal was
> formed before or during the killing.  In *People v. Valdez* (2004) 32 Cal.4th 73, 105,

---

[22] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition
was not entitled to § 2254(d) deference).

[23] Cal. Penal Code § 190.2(a)(17).

the defendant argued there was insufficient evidence to support the robbery-murder special circumstance because there was insufficient evidence he killed the victim in order to advance the independent felonious purpose of robbery.  The court held that to prove the robbery-murder special circumstance, the prosecution need only prove that the defendant formed the intent to steal before or while killing the victim.  (*Ibid.*)

Here there was sufficient evidence that [Pierce] intended to commit robbery, that he chose Wilson and Vasquez for that purpose, and that he did not complete the robbery after the shooting because his companions were urging him to leave.  Hence, the intent to rob was formed before the killing.

We conclude that even if the killing was accidental, it was not excepted from the application of the felony-murder special circumstance, and there was sufficient evidence to support the jury's finding.[24]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[25]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[26]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[27]

---

[24] *Pierce*, 2010 WL 1972942 at *4.

[25] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[26] *Jackson*, 443 U.S. at 318-19.

[27] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[28]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[29]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[30]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[31]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[32]  This is especially true where the highest court in the state has denied review of the lower court's decision.[33]

Pierce misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether

---

[28] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[29] *Jackson*, 443 U.S. at 324 n. 16.

[30] *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

[31] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . ..").

[32] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[33] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[34]  In this

case, the California Court of Appeal determined that there was sufficient evidence to support the

finding that the killing occurred in the commission of an enumerated offense as defined in

California law.  Although it might have been possible to draw a different inference from the

evidence, this Court is required to resolve that conflict in favor of the prosecution.[35]  Pierce bears

the burden of establishing by clear and convincing evidence that these factual findings were

erroneous;[36] a burden Pierce has failed to carry.  The record does not compel the conclusion that

no rational trier of fact could have found proof of the special circumstances as defined in

California law, especially considering the double deference owed under *Jackson* and AEDPA.

Pierce is not entitled to relief under his first ground.

Ground 2:  Admission of "Cartoonish" Killing Movie Clip

Pierce argues that the trial court erred in allowing the introduction at trial of a clip from the

movie "Men in Black" showing a callous killing because it was irrelevant and prejudicial to the point

of denying him a fair trial.  The California Court of Appeal recited the factual background underlying

this claim:

> The prosecution sought to introduce excerpts from the movies, "Men in
> Black" and "Men in Black II," arguing the clips would help explain [Pierce's]
> admission during his phone call to Finley.  The defense argued the clips had no
> relevance, would be prejudicial, and trivialized the issue.
> In ruling on the matter, the trial court acknowledged that the conversation
> between [Pierce] and Finley appeared "to be somewhat in code . . . ."  The trial court
> stated that the clip tended to incriminate [Pierce], to identify him as the killer, and to
> explain his conversation with Finley.  It found the clip had probative value and did

---

[34] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[35] *See Jackson*, 443 U.S. at 326.

[36] 28 U.S.C. § 2254(e)(1).

not have prejudicial impact.  The prosecution was allowed to admit the video clip from "Men in Black," but not from "Men in Black II" because it was a reiteration of what was in the first clip.

The clip was played for the jury.  The clip shows two government agents entering a pawn shop and demanding that the pawn shop proprietor show them his weapons.  When the proprietor is uncooperative, one of the agents shoots him in the head.  The proprietor is apparently an alien, because his head grows back and he says, "You insensitive prick. Do you have any idea how much that stings?"

Following the guilty verdict, [Pierce] made a motion for new trial based in part on the admission of the movie clip.  The trial court denied the motion.

[Pierce] argues the use of this movie clip was irrelevant, and that "[t]he callous comedic depiction bore an obvious potential of gratuitous character prejudice . . .."[37]

In rejecting Pierce's arguments, the appellate court held:

The movie clip was both relevant and non-prejudicial.  Relevant evidence is any evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid.Code, § 210.) [Pierce's] theory of defense was that: (1) he was not the shooter, (2) the shooting was accidental, and (3) the shooting did not occur during the commission of a robbery. The movie clip had the effect of explaining [Pierce's] phone conversation with Finley, which was conducted in code.  This phone conversation, in which [Pierce] admitted being the shooter, and claimed it was just like "Men in Black," where the government agent intentionally shot someone in the head, was relevant to the issues of identity, intent, and the absence of mistake or accident.

The evidence was also not unduly prejudicial.  Evidence Code section 352 provides that the trial court has the discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  "Undue prejudice" as expressed in Evidence Code section 352, does not mean "'damaging,' but refers instead to evidence that '"uniquely tends to evoke an emotional bias against defendant"' without regard to its relevance on material issues. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.)

Here, the film clip was relevant in part because [Pierce's] reference to it showed a callous disregard for his victim, which tended to prove [Pierce's] intent and lack of mistake.  The film clip was brief and, without context, was not particularly funny.  The clip did not show a particularly gruesome dead body after the head shot. On the other hand, there was evidence that the shot that killed the victim in this case obliterated one of the victim's eyes, and scattered his brain matter onto his shoe

_____

[37] *Pierce*, 2010 WL 1972942 at *5.

13

laces, his car's tire, door, and windshield, and onto the ground.  Given the gruesome nature of [Pierce's] crime, the fictional, bloodless depiction of an alien being shot was hardly prejudicial.

[Pierce] also argues the evidence was cumulative because there was no serious dispute that the killing was accomplished by a close range head shot. However, the evidence was not admitted to prove how the killing was accomplished. Rather, [Pierce's] reference to the movie when discussing the crime tended to show that he was the shooter, that he intentionally shot the victim, and that the shooting was not accidental.

The trial court acted well within its discretion in allowing the jury to view the film clip.  Because the evidence was properly admissible, we reject [Pierce's] claims it violated his constitutional rights of due process and equal protection.  (*People v. Gurule* (2002) 28 Cal.4th 557, 652.).[38]

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[39]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[40]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[41]  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution."[42]  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the

---

[38] *Id.* at *5-6.

[39] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[40] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[41] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[42] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

admissibility of evidence.[43]  In this context, the Supreme Court has defined the category of

infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees

enumerated in the bill of rights.[44]  For example, the Supreme Court has barred the introduction of

evidence in state-court criminal proceedings that violated the Fourth Amendment (search and

seizure),[45] Fifth Amendment (confessions),[46] Sixth Amendment (Confrontation Clause),[47] and

(right to counsel).[48]  On the other hand, in deciding cases involving the Federal Rules of

Evidence or federal evidentiary statutes, the Supreme Court is acting in its supervisory capacity

over the lower federal courts.[49]  Pierce does not allege that the introduction of the movie clip

contravenes any of these constitutional provisions.  "'Federal courts hold no supervisory

authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension.'"[50]

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code § 352,

permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair

---

[43] *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[44] *McGuire*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[45] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[46] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[47] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[48] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

[49] *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006).

[50] *Id.* (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)).

prejudice, confusion of the issues, or misleading the jury."  "A district court is accorded a wide

discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the

probative value of [the proffered evidence], and weighing any factors counseling against

admissibility is a matter first for the district court's sound judgment under Rules 401 and

403 . . . ."[51]  California employs a similar rule.[52]

Although the Ninth Circuit has suggested that an abuse of discretion may also amount to

a constitutional violation,[53] the Supreme Court has never held that abuse of discretion is an

appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme

Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct

review, in a federal habeas proceeding it is not.[54]  Having failed to raise an issue of constitutional

dimension, Pierce is not entitled to relief under his second ground.[55]

---

[51] *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and County of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).

[52] *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("[w]e review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

[53] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[54] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law. § 2254(d)(1)").

[55] Because the claim is meritless, Pierce's related ineffective assistance of counsel claim likewise fails.  *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (holding that a meritorious issue is necessary for a Sixth Amendment claim); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

Ground 3:  Admission of Evidence of Other Robberies

Pierce contends that the trial court erred in allowing into evidence testimony that he had committed other robberies.  The California Court of Appeal summarized the facts underlying this contention:

> During the prosecution's case-in-chief Rimpson testified [Pierce] asked him if he wanted to "hit a lick" and that [Pierce] had robbed people before with Finley.  Defense counsel did not object.  Defense counsel later called Elaine Stoops as a witness, one of the homicide detectives assigned to investigate the murder.  She testified that she interviewed  Rimpson on two occasions, and that only on the second occasion did Rimpson tell her [Pierce] asked him about doing a robbery.
> On cross-examination, the prosecutor asked Stoops the same questions he asked Rimpson, i.e., if [Pierce] had stated to Rimpson that he had robbed people before with Finley.  This time defense counsel objected on the basis of relevance.  The objection was overruled.[56]

The Court of Appeal, in rejecting Pierce's arguments, held:

> [Pierce] now claims the trial court erred in allowing this evidence of uncharged crimes.  He claims the evidence was not admissible pursuant to Evidence Code section 1101, largely because there were no details of the prior acts.
> Evidence Code section 1101 prohibits the admission of evidence of a person's prior bad acts unless such evidence is relevant to prove some fact such as motive or intent.  We review the trial court's admission of prior bad acts evidence for abuse of discretion.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 23.)
> In this case, evidence of [Pierce's] prior misconduct is relevant to prove his intent and motive on this occasion notwithstanding the lack of detail regarding the prior act.  "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent."  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)  Here, [Pierce's] intent to commit a robbery was at issue. [Pierce's] reason for committing the robbery was to get bail money for Finley. That [Pierce] had committed the same crime before, and that he had done it with another person was relevant to his intent when he armed himself and approached the victims in this case.

---

[56] *Pierce*, 2010 WL 1972942 at *6.

Accordingly, the trial court did not abuse its discretion when it overruled [Pierce's] objection to the testimony of detective Stoops.[57]

As discussed above in connection with the second ground, constitutional limitations on the admission of evidence are severely limited.  Federal Rule of Evidence 404, as does its counterpart, California Evidence Code § 1101, generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge.[58]  No preliminary showing is necessary before such evidence may be introduced for a proper purpose.[59]  If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Rules 402 and 403.[60]

There is a split among the circuit courts as to the proper standard of review, de novo or abuse of discretion, to be applied to the question of whether evidence falls within the scope of Rule 404(b).  The Ninth Circuit applies a de novo standard,[61] while the Second Circuit applies an

---

[57] *Id.* at *6-7.

[58] This Court notes that, "[t]o the extent the Supreme Court has addressed the issue, it has expressly reserved consideration of whether the admission of prior bad acts under state law to show propensity constitutes a due process violation."  *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006) (citing *McGuire*, 502 U.S. at 75 n.5).

[59] *Huddleston v. United States*, 485 U.S. 681, 687-88 (1988).

[60] *Id.* at 688; *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (noting that once it has been established that the evidence at issue serves an admissible purpose, such as establishing motive or intent, the only conditions justifying the exclusion of the evidence are those set forth in Rule 403).  Rule 402 "Relevant Evidence generally Admissible; Irrelevant Evidence Inadmissible";  Rule 403, "Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Waste of Time."

[61] *See United States v. Montgomery*, 384 F.3d 1050, 1061 (9th Cir. 2004).

abuse of discretion standard.[62]  California employs an abuse of discretion standard on appellate review of § 1101(b) rulings.[63]  The Supreme Court has held that in ruling on whether evidence is properly admitted under Rule 404(b) the court must consider whether:  (1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court, if requested, administered an appropriate limiting instruction.[64]  Under California Evidence Code § 1102(b), as "circumstantial evidence, its admissibility depends upon three principal factors: (1) the materiality of the fact sought to be proved or disproved; (2) the tendency of the uncharged crime to prove or disprove the material fact; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence."[65]

   As noted above in discussing Pierce's second ground, Federal Rule of Evidence 403, like its California counterpart California Evidence Code § 352, permitting the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" is a matter committed to the trial court's discretion.  Because abuse of

---

[62] *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006).

[63] *People v. Daniels*, 802 P.2d 906, 924 (Cal. 1991); *see People v. Kipp*, 956 P.2d 1169, 1181 (Cal. 1998) (admissibility ruling under section 1101(b) is essentially a determination of relevance that is reviewed for abuse of discretion).  Given the split between the circuits and the fact that the Supreme Court has not expressly ruled on this question, it cannot be said that the use of an abuse of discretion standard is an unreasonable application of federal law as established by the Supreme Court.  *Kessee*, 574 F.3d at 679.

[64] *Huddleston*, 485 U.S. at 691-92.

[65] *People v. Thompson*, 611 P.2d 883, 888 (Cal. 1980) (citations omitted).

discretion is not an appropriate standard in a federal habeas proceeding,[66] Pierce has failed to

raise an issue of constitutional dimension.  Pierce is not entitled to relief under his third ground.[67]

Ground 4:  "Special Circumstance" Instruction

The trial court gave CALCRIM No. 730 as follows:

> The defendant is charged with the special circumstance of murder committed while engaged in the attempted commission of robbery.  To prove that this special circumstance is true, the People must prove that:
> 1.  The defendant attempted to commit robbery;
> 2.  The defendant intended to commit or intended to aid and abet the perpetrator in committing robbery;
> 3.  The defendant did an act that caused the death of another person; and
> 4.  The act causing the death and the attempted robbery were part of one continuous transaction.
> To decide whether the defendant committed attempted robbery, please refer to the separate instructions that I will give you on that crime.  You must apply those instructions when you decide whether the People have proved first degree murder under a theory of felony murder.

On appeal, Pierce argued that the instruction as given was incomplete.

> [Pierce] argues the trial court should have added the following language, which appears as a bracketed portion of CALCRIM No. 730:
> "In addition, in order for this special circumstance to be true, the People must prove that the defendant intended to commit robbery independent of the killing.  If you find that the defendant only intended to commit murder and the commission of robbery was merely part of or incidental to the commission of that murder, then the special circumstance has not been proved."[68]

The Appellate Court rejected Pierce's argument, holding:

---

[66] *Renico*, 130 S. Ct. at 1862.

[67] Because the claim is meritless, Pierce's related ineffective assistance of counsel claim likewise fails.  *See Fretwell*, 506 U.S. at 374; *Barnes*, 463 U.S. at 751-52; *Miller*, 882 F.2d at 1434-45.

[68] *Pierce*, 2010 WL 1972942 at *7.

[Pierce] would have been entitled to an instruction pinpointing this issue had he requested it, but he did not make such a request, and the trial court had no obligation to give such an instruction since neither party requested it. (*People v. Silva* (2001) 25 Cal.4th 345, 371.)

[Pierce] argues his trial counsel was ineffective for failing to request the instruction. The defendant in *People v. Valdez, supra,* 32 Cal.4th at pages 112-113, made the same argument. The Supreme Court rejected the argument, holding that Valdez's claim lacked merit because the additional language Valdez asserted should have been in the instruction was based upon the court's discussion in *Green, supra,* 27 Cal.3d at page 61, which held that the special circumstance applied where a murder occurred during the commission of a robbery, but not where a robbery occurred during the commission of murder. (*People v. Valdez, supra,* 32 Cal.4th at p. 113.) The court held that *Green's* clarification of the scope of the felony-murder special circumstance was not an element of the special circumstance on which the jury must be instructed unless the evidence supports such an instruction.

The evidence did not support such an instruction here. In *Green, supra,* the defendant killed his wife, then stole her clothes, rings, and purse to conceal the identity of the body. (*Green, supra,* 27 Cal.3d at pp. 16-17, 62.) The Supreme Court held that the robbery was insufficient to support a felony-murder special circumstance because Green did not commit the robbery for a reason independent of the murder, then commit the murder. Instead, he committed the robbery to conceal the murder. (*Id.* at pp. 60-62.)

In this case, there was no significant evidence that [Pierce's] intent from the beginning was to murder Wilson, and that he did not form an intent to rob Wilson until after he shot him. Rather, the evidence indicated [Pierce] intended to rob Wilson and Vasquez before he approached them with a shotgun, and only abandoned the robbery attempt when he shot Wilson. Thus, the court had no duty to give the clarifying language.[69]

The Supreme Court has held that it is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."[70] When evaluating whether a jury charge denies a defendant the right to fundamentally fair trial, the challenged jury instruction must be viewed in the context of the

---

[69] *Id.* at *7-8.

[70] *Naughten,* 414 U.S. at 146-47.

entire charge on the specific subject.[71]  To support a collateral attack on the judgment the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"[72]  In a federal habeas proceeding, the issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."[73]  Where the defect is the failure to give an instruction, because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law, the burden is even heavier.[74]  "The burden on the habeas petitioner is 'especially heavy' where, as here, the alleged error involves the failure to give an instruction."[75]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[76]  Consequently, the California Court of Appeal having held that the evidence did not support the giving of the requested instruction under state law, this ends the inquiry.[77]  Pierce is not entitled to relief under his fourth ground.

---

[71] *Id.*

[72] *Id.*

[73] *McGuire*, 502 U.S. at 72 (quoting *Naughten*, 414 U.S. at 147).

[74] *See Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

[75] *Clark v. Brown*, 442 F.3d 708, 714 (9th Cir. 2006) (citations omitted).

[76] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[77] *Waddington v. Sarausad*, 555 U.S. 179, 189, n.5 (2009) ("The Washington Supreme Court expressly held that the jury instruction correctly set forth state law, . . . and we have repeatedly held that 'it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.'" (quoting *McGuire*, 502 U.S. at 67-68)); *see Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

Ground 5:  Failure to Instruct on Involuntary Manslaughter

Pierce argues that the trial court erred in not giving a requested involuntary manslaughter instruction as lesser-included offense.  Supreme Court precedent does not require a trial court to instruct the jury on a lesser included offense in a non-capital case,[78] and the Ninth Circuit has concluded that such a claim is not cognizable on federal habeas review.[79]  Because his argument is foreclosed by controlling authority, Pierce is not entitled to relief under his fifth ground.[80]

Ground 6:  Unconstitutionality of Felony-Murder "Special Circumstance" Statute

Pierce argues that the felony-murder "special circumstance" statute is unconstitutional.
The California Court of Appeal rejected Piece's argument, holding:

> [Pierce] argues the felony-murder special circumstance statute, pursuant to which he received a sentence of life without the possibility of parole, violates the federal and state constitutions.  As he recognizes, California's Supreme Court has rejected these claims with respect to the same statute in cases involving the death penalty.  He nevertheless raises the claims for purposes of exhaustion of state remedies.
>
> [Pierce] argues the felony-murder special circumstance is a "vague and indiscriminate dual use of the same facts to support first-degree murder and an LWOP term," violating the Eighth Amendment and depriving him of due process, equal protection, and a jury determination of "the issue."  The Supreme Court has considered and rejected this argument several times.  (*People v. Abilez* (2007) 41 Cal.4th 472, 528; *People v. Webster* (1991) 54 Cal.3d 411, 456; *People v. Marshall* (1990) 50 Cal.3d 907, 945-946.)  We likewise reject it.

---

[78] *Beck v. Alabama,* 447 U.S. 625, 638 (1980)

[79] *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000); *see also* 28 U.S.C. § 2254(d)(1); *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

[80] Because the claim is meritless, Pierce's related ineffective assistance of counsel claim likewise fails.  *See Fretwell*, 506 U.S. at 374; *Barnes*, 463 U.S. at 751-52; *Miller.*, 882 F.2d at 1434-45.

The Supreme Court has also rejected the claim that the felony-murder special circumstance does not narrow the class of defendants subject to capital punishment, resulting in an arbitrary application of the death penalty.  (*People v. Pollock* (2004) 32 Cal.4th 1153, 1195; *People v. Gurule, supra,* 28 Cal.4th at pp. 663-664.)  We follow the Supreme Court's direction in this matter and conclude there was no constitutional violation.[81]

The Supreme Court has never sustained a constitutional attack on California's felony-murder special circumstances statute, Penal Code Section 190.2.  Indeed, when presented with the issue, the Supreme Court has upheld the felony-murder "special circumstances statute" against challenges to its constitutionality.[82]  In the absence of explicit direction from the Supreme Court, this Court cannot say that the decision of the California Court of Appeal in this case was contrary to, or involved an unreasonable application of the relevant Supreme Court decisions.[83]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[84]  Pierce is not entitled to relief under his sixth ground.

Ground 7:  Failure to Hold *Marsden* Hearing

Pierce argues that the trial court erred in not holding a hearing on his complaint that he was denied the effective assistance of counsel.  The California Court of Appeal recited the facts underlying  Pierce's argument:

The probation report contained the following statement of [Pierce]:

---

[81] *Pierce*, 2010 WL 1972942 at *8-9.

[82] *See, e.g., Tuilaepa v. California*, 512 U.S. 967, 975-80 (1994); *Pulley v. Harris*, 465 U.S. 27, 51-53 (1984); *see also Houston v. Roe*, 177 F.3d 901, 907-08 (9th Cir. 1999) (rejecting the argument that Penal Code § 190.2 is unconstitutionally vague).

[83] *Musladin*, 549 U.S. at 74.

[84] *Id.* at 77 (alterations by the Court).

"The defendant stated that he is innocent and that is why he went to trial. He stated his attorney did not call anybody to testify on his behalf. As a result, he wanted to file a motion for inadequate counsel. He remarked that his associate was granted immunity and then lied and implicated the defendant in the incident. He also remarked that his male associate who was in jail was not allowed to testify regarding the meaning of their phone call conversations to clarify their actual meaning."

As a result of this statement in the probation report [Pierce's] trial counsel sent a letter to the trial court stating that although he was preparing a motion for new trial, he would not include inadequacy of counsel as a ground because he was unable to agree with the [Pierce's] assessment. The letter continued: "If, after the court's consideration of all the materials presented, you feel that Mr. Pierce has been inadequately represented, the appointment of new counsel would be appropriate. [¶] If that is the case, I will ask the court to be released from my representation. If not, I . . . remain prepared to do everything appropriate on Mr. Pierce's behalf."

At the sentencing hearing, the trial court addressed [Pierce's] statement in the probation report. The trial court indicated it did not take the claim seriously in light of the conduct of the trial and the context of the case and the other information in the probation report. The court told [Pierce] that "[a]ll the witnesses who were present at the scene of the crime testified in this particular case, and I know from our discussions through the trial that it didn't seem to me that there were any other material witnesses who could have been called; and I am acting on that assumption."[85]

In rejecting Pierce's argument the Court of Appeal held:

[Pierce] now argues he was entitled to a *Marsden* hearing. *Marsden* held that "a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.' [Citation.]" (2 Cal.3d at p. 124.)

The court's duty to conduct a *Marsden* hearing is not triggered unless there is "some clear indication by defendant that he wants a substitute attorney." (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8.) Accordingly, this court has held that where a defendant bases a new trial motion on inadequate representation, but does not express a desire to obtain substitute counsel to assist in the new trial motion or to provide representation at sentencing, "or for any other purpose going forward," the trial court has no obligation to conduct a *Marsden* hearing. (*People v. Richardson* (2009) 171 Cal.App.4th 479, 485.).

---

[85] *Pierce*, 2010 WL 1972942 at *9.

25

> Here, [Pierce] gave no indication that he desired new counsel to represent him as the case moved forward, only that he believed in retrospect that he had received inadequate assistance of counsel.  This was insufficient to invoke the trial court's duty to conduct a *Marsden* hearing.[86]

Before this Court, as he did before the California Supreme Court, Pierce argues that the trial court abused its discretion by permitting defense counsel to oppose Pierce's claims of ineffective assistance of counsel and by not conducting any inquiry of Pierce.  The first hurdle that Pierce fails to clear is that, although he expressed some dissatisfaction with counsel's performance in his interview related to the probation report, there is nothing in the record indicating that Pierce requested that counsel be discharged and the trial court appoint new counsel.  Indeed, as the appellate court noted, there is no indication in the record that he desired new counsel to represent him, simply a passing reference showing a dissatisfaction of the adequacy of the representation he received.  To the extent Pierce contends the trial court abused its discretion, Pierce does not raise an issue of constitutional dimension.[87]

Even if the Court could reach the merits, Pierce would not prevail.  First, the Court notes that the right to counsel of one's choice is a qualified right that applies only to people who can afford to retain counsel.[88]  In this case, the issue is neither Pierce's right to choice of counsel nor a denial of counsel.  Pierce's reliance on *Bradley v. Henry*[89] is misplaced.  In *Bradley*, the trial court denied a motion to substitute retained counsel for appointed counsel.  To the extent

---

[86] *Id.* at *9-10.

[87] *Renico*, 130 S. Ct. at 1862.

[88] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)); *see Schell v. Witek*, 218 F.3d 1017, 1025-26 (9th Cir. 2000) (en banc).

[89] 510 F.3d 1093 (9th Cir. 2007).

relevant to this case, the trial court declined to permit substitution in part opining without inquiry that Bradley was not in a position to afford retained counsel.  The Ninth Circuit held that the trial court could not assume that Bradley could not afford retained counsel without a hearing.[90]

The Supreme Court has "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel."[91]  Instead the constitutional question is whether the conflict between Pierce and his attorney prevented effective assistance of counsel.  The other Ninth Circuit decision relied on by Pierce, *Schell*, eviscerates his argument.

> Thus, the ultimate constitutional question the federal courts must answer here is not whether the state trial court "abused its discretion" in not deciding Schell's motion, but whether this error actually violated Schell's constitutional rights in that the conflict between Schell and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.[92]

Here, contrary to his claims of a conflict, Pierce expressed nothing more than a general sense of dissatisfaction with his attorney's performance, not any conflict, irreconcilable or otherwise. Under *Strickland*, to demonstrate ineffective assistance of counsel, Pierce must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[93]  Pierce must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability

---

[90] *Id.* at 1097-98.

[91] *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).

[92] *Schell*, 218 F.3d at 1026.

[93] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

that, but for counsel's ineffectiveness, the result would have been different.[94]  Strangely, Pierce

did not raise an ineffective assistance of counsel claim on direct appeal, nor does he assert an

ineffective assistance of counsel claim as a ground for habeas relief in this Court.  Of the specific

complaints articulated, only the claim that the associate whose conversation with Pierce was

recorded was not called as witness even remotely supports an ineffective assistance of counsel

claim.  Pierce has never articulated what the testimony his "associate" would have given, or

explained how this testimony might possibly have affected the outcome.

Finally, perhaps more importantly, Pierce does not make even a rudimentary attempt to

show that he was somehow prejudiced by the trail court's refusal to conduct a *Marsden* hearing,

i.e., that even if he had new counsel the outcome of Pierce's sentence would have differed.  In

short, even at this late date Pierce has failed to show either that counsel was incompetent in

failing to call the "associate" as a witness, or that he was prejudiced by any alleged incompetence

of his counsel, i.e., the outcome of either the trial or the sentencing would have differed.  Pierce

has the burden of showing by a preponderance of the evidence that he merits habeas relief.[95]

Because he has failed to shoulder this burden, Pierce is not entitled to relief under his seventh

ground.

---

[94] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[95] *Silva*, 279 F.3d at 835.

Ground 8:  Cumulative Error

Pierce contends that the cumulative effect of the errors deprived him of his due process right to a fair trial.  The California Court of Appeal rejected that argument on the basis that there were no instances of multiple errors.[96]

"While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness."[97]  As did the California Court of Appeal, this Court has considered and rejected the errors Pierce seeks to cumulate; to the extent there was any error, his trial was not rendered fundamentally unfair.[98]  Pierce is not entitled to relief under his eighth ground.[99]

---

[96] *Pierce*, 2010 WL 1972942 at *10 n.3.

[97] *Peyton v. Cullen,* 658 F.3d 890, 896-97 (9th Cir.2011) (citing *Chambers v. Mississippi,* 410 U.S. 284, 298, 302-03 (1973)).

[98] *Id.*

[99] Because the claim is meritless, Pierce's related ineffective assistance of counsel claim likewise fails.  *See Fretwell*, 506 U.S. at 374; *Barnes*, 463 U.S. at 751-52; *Miller*, 882 F.2d at 1434-45.

## V.  CONCLUSION AND ORDER

Pierce is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[100]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[101]

The Clerk of the Court is to enter judgment accordingly.

Dated:  November 20, 2012.

                                      /s/ James K. Singleton, Jr.
                                      JAMES K. SINGLETON, JR.
                                      United States District Judge

---

[100] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[101] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.